Docusign Envelope ID: E74FABB6-7F6C-4234-BCB6-546BC3CF7AF4

STATE OF MICHIGAN

IN THE 51ST JUDICIAL CIRCUIT FOR THE COUNTY OF OCEANA

WORLDWIDE TROPHY ADVENTURES, LLC, a Michigan Limited Liability Company,

    Plaintiff,

v

KURTIS BELDING, a Colorado Resident, and WESTERN OBSESSIONS TV, LLC, a Colorado limited liability company,

    Defendants.

File No. 25-17200 -CB

Hon. Eric R. Fox

**VERIFIED COMPLAINT**

VARNUM LLP
Timothy P. Monsma (P72245)
Attorneys for Plaintiff
P.O. Box 352
Grand Rapids, MI 49501-0352
616/336-6000

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the Complaint.

This case involves a business or commercial dispute as defined in MCL 600.8031(c).

NOW COMES Plaintiff, Worldwide Trophy Adventure, LLC ("WTA"), by and through its attorneys, Varnum LLP, and for its Verified Complaint states as follows:

### THE PARTIES

1.    WTA is a Michigan limited liability company with its principal place of business located at 2517 S. 16th Ave., Shelby, MI 49455.

2. Defendant Kurtis Belding ("Mr. Belding"), is a Colorado resident residing at 1869 Territory Circle, Parker, CO 80138.

3. Defendant Western Obsessions TV, LLC ("Western Obsessions"), is a Colorado limited liability company with its principal place of business at 1869 Territory Cir, Parker, CO 80138.

## JURISDICTION AND VENUE

4. This court has jurisdiction, as the amount in controversy exceeds $25,000 and the Verified Complaint seeks equitable relief.

5. Venue is proper, as Plaintiff does business in Oceana County, Michigan.

6. This case involves a business or commercial dispute as defined in MCL 600.8031(c).

## GENERAL ALLEGATIONS

### Nature of the Case

7. This case arises out of Defendants' theft and surreptitious use of WTA's confidential and proprietary customer database. This database contains WTA's entire customer list, along with contact information for those customers and detailed profile and financial information. It is one of the company's most valuable pieces of intellectual property and was painstakingly prepared by the company over the course of many years, at significant expense.

8. The database includes all email address, SMS (text) information, cell phone data, profiles about past customer purchases regarding various WTA sweepstakes. This includes a complete record of each individual's customer profile, name, address, cell phone number, transactional data, and data usage (*i.e.*, how they interact with the WTA website). *In all, the*

database contains 296,000 customer profiles, 90,000 of which are currently active. As such, the database would be extremely valuable to any of WTA's competitors.

9. Mr. Belding is a former WTA employee, and he had access to this data while he was with WTA because he ran WTA's text message program for a time in the company's Klavyo platform.

10. The database would be invaluable for WTA's competitors, and the unauthorized use or disclosure of the database, and the names and contact information in the database, could have catastrophic consequences for the company and cause irreparable damage to its good will and customer relationships.

11. Mr. Belding did not have authorization to download or disclose this information at any time, during or after his employment with WTA. Nevertheless, the company recently learned that, prior to his departure in August of 2024, Mr. Belding improperly accessed, stole, and continues to use, the database for his own benefit, for the benefit of his competing company, Western Obsessions, and most recently, on behalf of at least one other WTA competitor, Outdoors International.

12. Through this action, WTA seeks to prevent the further unauthorized use, distribution, and disclosure of its confidential information.

### WTA and Its Business

13. WTA is a leading provider of outdoor adventure services, including the coordination and facilitation of trophy hunting and fishing expeditions around the globe. WTA services a niche market, with clients, vendors, and consultants around the world.

14. Hunting and fishing adventures are a serious commitment of both one's time and money. To maximize the chances of a successful outing, and to ensure access to prime areas,

outfitters, and vendors, outdoor enthusiasts must invest significant time, money, and effort to research these destinations.

15. WTA does this work for its clients, saving them significant time and money and maximizing the possibility of a rewarding, successful outdoor adventure. By booking trips through WTA, its clients are assured a good location with a reputable outfitter that WTA has certified or endorsed.

16. WTA's customer relationships, reputation, and vast customer base are critical to its ability to maintain itself as the leading turnkey outfitter in the industry.

17. WTA's clients receive access not only to WTA's expert services, but also access to WTA's extensive knowledge of fishing and hunting. Among other valuable services, WTA and its consultants provide tips on getting prepared for clients' outdoor adventures, insight into likely physical and mental requirements, information about guides and operators, advice on gratuities and many other details that are often forgotten or simply overlooked.

18. WTA also has an in-house full-service travel agency. WTA can expertly handle all the arrangements for its clients' fishing and hunting adventures. The company's specialists are trained to handle all the special needs that come with adventure travel—things such as traveling with firearms, dealing with trophies, freezer services, licensing and tagging, and similar issues.

19. Simply put, WTA's role is to take the guesswork out of the process. WTA's goal is to limit the number of problems associated with traveling and streamline its clients' hunting or fishing experience.

### Mr. Belding's Theft of WTA's Confidential Information and Subsequent Use of that Information to Benefit WTA's Competitors

20. Prior to his resignation on August 2, 2024, Mr. Belding was employed with WTA as its digital marketing manager. In that role, he was responsible for, among other things, social

Docusign Envelope ID: E74FABB6-7F6C-4234-BCB6-546BC3CF7AF4

media management and the complete marketing program and content creation for WTA's business including SMS texting. He reported directly to Nick Filler, WTA's Director of Marketing and Brand Strategy.

21.  Mr. Belding's role involved substantial client contact, and he had access to the company's digital customer database. He was not authorized to download, transfer, or share that information with anyone, and certainly not WTA's competitors, however.

22.  As WTA recently learned, following his resignation, on June 24, 2024, Mr. Belding formed a competing entity, Western Obsessions.

23.  Like WTA, Western Obsessions offers prospective clients "hunt adventures" around the world, primarily in Canada and Alaska. See, e.g., https://www.westernobsessionstv.com/hunt-adventures. These trips are recorded and subsequently broadcast on media including YouTube. See id. Mr. Belding describes his decision to form Western Obsessions as a "mid-life adjustment." See https://www.westernobsessionstv.com/.

24.  Unfortunately, as WTA also recently learned, prior to his departure from WTA, Mr. Belding accessed—and subsequently used—WTA's confidential and proprietary customer email database to target WTA's customers and to attempt to induce them to book excursions through Western Obsessions, rather than through WTA.

25.  WTA has confirmed that Mr. Belding accessed, stole, and subsequently used the customer database. He subsequently shared the database file with at least one of WTA's competitors, Outdoors International, which also sent an email blast to the WTA database email addresses, offering a sweepstakes substantially similar to those provided by WTA.

26. WTA knows this, because several WTA email addresses were embedded in the file as a safeguard; if any third-party, such as Mr. Belding, used the file to send marketing email blasts, the WTA addresses would be included in those blasts. Those specific WTA email mailboxes have received multiple email blasts from the customer database in the wake of Mr. Belding's departure, confirming that he is still in possession and actively using that file. These marketing blasts have originated from both Western Obsessions and from Outdoors International, proving that each of those companies has access to and is using WTA's customer database.

27. A number of WTA customers contained in the file also received solicitation emails. Neither Mr. Belding nor Western Obsessions would be in a position to send mass solicitations of this type to WTA's clients (and to WTA itself) without the highly confidential customer database.

28. WTA has independently confirmed that several email addresses which receive Western Obsessions' marketing emails are email addresses sourced directly from WTA's customer database, which, again, Mr. Belding was not authorized to access, use or disclose at any time.

29. WTA's email and SMS service provider has confirmed that it did not release or otherwise make available the WTA client list to Mr. Belding or to any other third-party; the only way Mr. Belding could have accessed that information is illicitly.

30. Mr. Belding's theft of WTA's client list and related information was deliberate and calculated to promote Western Obsessions, at WTA's expense; Mr. Belding intended to—and in fact did—use the client database to solicit clients away from WTA and to divert that business to Western Obsessions.

31. Mr. Belding continues to use and access WTA's confidential client database, for the benefit of Western Obsessions and to the extreme detriment of WTA.

Docusign Envelope ID: E74FABB6-7F6C-4234-BCB6-546BC3CF7AF4

32. WTA has repeatedly demanded that Mr. Belding cease and desist from using, accessing, or disclosing WTA's confidential information and that he immediately return such information to WTA. See, e.g., August 14, 2025, Letter from J. Droppers, **Exhibit A**. To date, Mr. Belding has refused. This lawsuit is the result.

### COUNT I – BREACH OF FIDUCIARY DUTY (Mr. Belding)

33. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

34. As an employee and agent of WTA, Mr. Belding owed WTA fiduciary duties, including the duty of loyalty.

35. By accessing, downloading, and subsequently using WTA's confidential and proprietary information for the benefit of Western Obsessions, and to the detriment of WTA, Mr. Belding breached his fiduciary duties to WTA.

36. Mr. Belding's breach of his fiduciary duties has damaged WTA and potentially exposed WTA's Confidential Information to third parties, including a direct competitor, all without WTA's consent.

WHEREFORE Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff, and against Defendant, in an amount exceeding $25,000 and such other and further relief, including injunctive relief, as is in accordance with applicable law, plus interest, costs, and attorneys' fees.

### COUNT II – MISAPPROPRIATION OF TRADE SECRETS (All Defendants)

37. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

38. During the course of his employment, Mr. Belding was not given and had no authority to access to WTA's confidential information, including its confidential client database.

39. Neither Mr. Belding nor Western Obsessions is authorized to possess, access, use, or disclose the client database in anyway.

40. The client database is not generally known to, or readily ascertainable by, the general public or WTA's competitors.

41. The client database could provide WTA's competitors, including Western Obsessions, with economic value if used or disclosed by Mr. Belding or Western Obsessions.

42. In light of the value of the client database, WTA makes significant efforts to maintain the confidential nature of the database, including limiting the individuals with authorization to access the database.

43. Upon information and belief, Mr. Belding and Western Obsessions misappropriated WTA's trade secrets without WTA's knowledge or assent.

44. Upon information and belief, Mr. Belding is currently working for a direct competitor of WTA, Western Obsessions, and is using the confidential information to benefit that competitor, to the detriment of WTA.

45. Mr. Belding's misappropriation of WTA's trade secrets constitutes a violation of the Michigan Uniform Trade Secrets Act, MCL 445.1901 *et seq.*

46. As a result of Mr. Belding's and Western Obsession unauthorized conduct, WTA has been damaged.

WHEREFORE Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff, and against Defendants, in an amount exceeding $25,000 and such other and further

relief, including injunctive relief, as is in accordance with applicable law, plus interest, costs, and attorneys' fees.

### COUNT III – CONVERSION (All Defendants)

47. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

48. At all times, the client database was WTA's property.

49. In taking and subsequently using the client database to solicit WTA's clients, Defendants wrongfully converted the client database.

50. As a result of Defendants' conversion, WTA has been damaged.

WHEREFORE Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff, and against Defendants, in an amount exceeding $25,000 and such other and further relief, including injunctive relief, as is in accordance with applicable law, plus interest, costs, and attorneys' fees.

### COUNT IV – STATUTORY CONVERSION (All Defendants)

51. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

52. At all times, the client database was WTA's property.

53. In taking and subsequently using the client database to solicit WTA's clients, Defendants wrongfully converted the client database to their own use, in violation of MCL 600.2919a.

54. As a result of Defendants' conversion, WTA has been damaged

WHEREFORE Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff, and against Defendants, in an amount exceeding $25,000 and such other and further

Docusign Envelope ID: E74FAB86-7F6C-4234-BCB6-546BC3CF7AF4

relief, including injunctive relief, as is in accordance with applicable law, plus interest, costs, and attorneys' fees.

## COUNT V – UNJUST ENRICHMENT

55. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

56. At all times, the client database was WTA's property.

57. In taking and subsequently using the client database to solicit WTA's clients, Defendants have received a substantial benefit.

58. It would be unjust inequitable to allow Defendants to continue to benefit from WTA's client list, which took substantial effort and expense, over many years, to compile.

WHEREFORE Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff, and against Defendants, in an amount exceeding $25,000 and such other and further relief, including injunctive relief, as is in accordance with applicable law, plus interest, costs, and attorneys' fees.

## COUNT VI – TORTIOUS INTERFERENCE (All Defendants)

59. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

60. Over the course of many years, WTA has worked hard to develop and strengthen its client relationships.

61. As a consequence, WTA has a legitimate business expectancy with respect to those client relationships.

62. At all times, Defendants were aware of WTA's business expectancies with regard to its current and prospective clients

63.     In taking and subsequently using the client database to solicit WTA's clients, Defendants have intentionally and wrongfully interfered with WTA's business expectancies.

64.     As a result of Defendants' tortious interference, WTA has been damaged.

WHEREFORE Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff, and against Defendants, in an amount exceeding $25,000 and such other and further relief, including injunctive relief, as is in accordance with applicable law, plus interest, costs, and attorneys' fees.

I declare under the penalties of perjury that this Verified Complaint has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

Worldwide Trophy Adventures, LLC

Date: September 23, 2025         By: _Mark V. Peterson_
                                     Mark Peterson

                                 Its: President and Chairman

Respectfully submitted,

VARNUM LLP
Attorneys for Plaintiff

Date: September 2*, 2025         By: _____
                                     Timothy P. Monsma (P72245)
                                 Business Address and Telephone:
                                     Bridgewater Place, P.O. Box 352
                                     Grand Rapids, MI 49501-0352
                                     (616) 336-6000

27915136.1

11

# EXHIBIT A



Bridgewater Place | Post Office Box 352
Grand Rapids, Michigan 49501-0352
Telephone 616 / 336-6000 | Fax 616 / 336-7000 | www.varnumlaw.com

Direct 616 / 336-6893

Jacob A. Droppers

August 14, 2025

*Via Overnight Delivery and Email (kurt@westernobsessionstv.com)*

Mr. Kurtis Belding
1869 Territory Circle
Parker, Colorado 80138

    Re:    *Unauthorized Use and Misappropriation of Confidential Information*

Dear Mr. Belding:

    I am writing on behalf of Worldwide Trophy Adventures ("WTA"). I write regarding your unauthorized acquisition and use of WTA's confidential and proprietary customer email database, and to demand your immediate compliance with the directives set forth below.

    WTA has independently confirmed that several email addresses which receive your "Western Obsessions" marketing emails are email addresses that were sourced directly from WTA's confidential customer email database. You did not have authorization to access, use, or retain this information at any time during or after your employment with WTA. Furthermore, WTA's email and SMS service provider has confirmed that it did not release or otherwise make available the WTA client email list to you or any third party.

    The WTA client email file is one of the company's most valuable digital assets, developed and maintained at significant expense and effort. Your use of this file to market and solicit competing hunting services constitutes a direct and substantial competitive harm to WTA, diminishes the value of its proprietary information, and threatens the integrity of its client relationships. WTA has reason to believe that your actions were deliberate and calculated to solicit WTA's customers and divert business for your own benefit and/or the benefit of others.

    WTA is actively investigating the full scope of your misconduct and reserves all rights to pursue any and all available legal remedies. Your actions constitute, at a minimum, violations of the following:

- The Michigan Uniform Trade Secrets Act (MCL 445.1901 et seq.) and the analogous Colorado Uniform Trade Secrets Act (CRS 7-74-101 et seq.), both of which prohibit the misappropriation and unauthorized use of trade secrets;
- Conversion, by wrongfully exercising dominion and control over WTA's property;

# VARNUM

- Unjust Enrichment, by benefitting from the unauthorized use of WTA's confidential information; and
- Tortious Interference with WTA's business relationships and expectancies.

In light of your illegal actions, WTA hereby directs you to:

- Immediately cease and desist from any further use, disclosure, or dissemination of WTA's confidential and proprietary information, including but not limited to its customer email database;
- Immediately identify and return (or permanently destroy, at WTA's election) all copies, extracts, or derivatives of WTA's confidential information in your possession, custody, or control;
- Provide written confirmation within five (5) business days of the date of this letter that you have complied fully with the above demands, including a detailed description of all steps taken to ensure compliance.

If we do not receive written confirmation by August 20, 2025 that you have complied with the demands contained in this letter, we will assume that you intend to continue violating your legal obligations.

## *Your Duty to Preserve Potentially Relevant Evidence*

WTA has retained this firm to investigate and pursue such legal action as may be necessary and appropriate to protect its interests. Therefore, I also write to formally demand the preservation of all documents[1] that are currently in your possession relating to your "Western Obsessions" marketing emails, as well as any and all documents relating to or arising out of your current marketing efforts, and any other documents which may be relevant to WTA's potential claims or which may lead to the discovery of admissible evidence.

Under state and federal law, potential parties to litigation have a broad duty to preserve possibly relevant evidence whenever they (1) reasonably anticipate litigation; (2) have actual notice of impending litigation; or (3) should be aware of impending litigation. *See, e.g., John v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). A party has the same obligation to preserve electronically stored information as it does for all other types of information. The duty to preserve evidence applies even before an action has been commenced and continues throughout the course of the proceeding. *See id*. Once a party has notice or should reasonably anticipate litigation, it must suspend all document retention/destruction policies and institute a "litigation hold" to ensure the preservation of all potentially relevant documents. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

---

[1] The terms "document" and "documents" shall have the broad meaning given to those the words under the applicable court rules and shall include all physical and electronic documents, whether in final form or otherwise.

# VARNUM

Once triggered, the duty to preserve evidence related to litigation is extremely broad. Not only does it include preservation of evidence a party knows, or reasonably should have known, may be relevant to future litigation, but also includes evidence reasonably calculated to lead to the discovery of admissible evidence, as well as evidence reasonably likely to be requested. *See id.*; *see also* Fed. R. Civ. P. 26(b)(1). In addition, the duty to preserve is not limited to information in the party's possession; it extends to information within that party's custody and control, including information held by third parties on behalf of a litigant. *See* Fed. R. Civ. P. 34(a)(1); *see also Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009).

Sanctions for failure to preserve relevant evidence can be severe, and courts have inherently broad discretion to determine which sanctions are appropriate. *Goetz*, 531 F.3d at 459; *Adkins*, 554 F.3d at 653. These sanctions may include but are by no means limited to granting summary judgment or instructing a jury to find against a litigant with respect to certain material facts. *Adkins*, 554 F.3d at 653. Criminal penalties may also be applicable. *See, e.g.*, 18 U.S.C. § 1512(c). Notably, a court need not find that the litigant acted in bad faith or committed intentional misconduct before issuing these sanctions. *Klezmer ex rel. Desyatnik v. Buynak*, 227 F.R.D. 43, 50 (E.D.N.Y. 2005); *see also Forest Laboratories, Inc. v. Caraco Pharmaceutical Laboratories, Ltd.*, No. 06-CV-13143, 2009 WL 998402, at *6 (E.D. Mich. April 14, 2009).

### *Steps You Should Take to Preserve Potentially Relevant Evidence*

In light of your legal duties and obligations, you should not destroy, conceal, or alter any paper documents or electronic files and other data generated by or stored on your computers, smart phones, data systems, storage media (*e.g.*, main frames, internal and external hard drives, jump drives, back-up tapes, cloud storage, etc.), or any other electronic data, such as voice mail. You should also take affirmative steps to prevent anyone with access to your data, systems, and archives (whether an employee, agent, officer, director, consultant, contractor, affiliate, or other) from seeking to modify, destroy or hide electronically stored information ("ESI") on network or local hard drives and on other media or devices (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging, damaging or replacing media, encryption, compression, steganography or the like). In addition, to the extent that documents are in the possession, custody, or control of third parties, you should take appropriate steps to ensure that they are made aware of the preservation demands made in this letter, and that steps are taken to preserve data that is either relevant, or likely to lead to the discovery of admissible evidence.

WTA takes this matter very seriously. While we are still investigating the scope of your misconduct, WTA intends to take any and all necessary steps to protect its legitimate business interests, existing and potential client relationships, and confidential information. While WTA hopes that it will not be forced into litigation to ensure these protections, should you fail to act in accordance with the law, it will pursue all legal and equitable remedies afforded to it.

# VARNUM

Should you have any questions about the matters raised in this letter, please do not hesitate to contact me, directly or through counsel.

Very truly yours,

**VARNUM**

Jacob A. Droppers

JAD/