UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WORLDWIDE TROPHY ADVENTURES, LLC,

    Plaintiff,

v.

KURTIS BELDING, et al.,

    Defendants.
_____/

Case No. 1:25-cv-1282

HON. JANE M. BECKERING

**OPINION AND ORDER**

Plaintiff Worldwide Trophy Adventures ("Worldwide") initiated this removed trade secret action against Defendants Kurtis Belding and Western Obsessions TV, LLC ("Western Obsessions") by filing a Verified Complaint in state court on September 23, 2025. Worldwide also filed a motion seeking an ex parte temporary restraining order and a preliminary injunction. According to Worldwide, this case "arises out of Defendants' theft and surreptitious use" of Worldwide's "confidential and proprietary customer database," which qualifies as a trade secret under Michigan law (Verified Compl., ECF No. 1-1 at PageID.6). Defendant Belding denies that he misappropriated Worldwide's trade secrets and notes that Worldwide never asked him to sign a confidentiality agreement, non-compete agreement, employee handbook, or an employment agreement of any kind. For the reasons and subject to the limitations set forth in detail below, the Court will deny the motion for a temporary restraining order and a preliminary injunction.

## I. BACKGROUND

### A. Factual Background[1]

Worldwide is a limited liability company based in Michigan that offers "outdoor adventure services, including the coordination and facilitation of trophy hunting and fishing expeditions around the globe" (Verified Compl., ECF No. 1-1 at PageID.5, 7).  Defendant Belding is a Colorado resident who worked as a digital marketing manager for Worldwide prior to his resignation in August 2024 (*id.* at PageID.6, 8–9).  Defendant Western Obsessions is a limited liability company based in Colorado (*id.* at PageID.6).

Worldwide maintains a database containing a customer list, customer contact information, and customer profiles that include financial information (*id.* at PageID.6–7).  Worldwide has expended time and money to compile this customer database over several years (*id.*).  Defendant Belding, as a Worldwide digital marketing manager, had access to this database (*id.* at PageID.6).

Worldwide attests that, from the company's perspective, Defendant Belding "did not have authorization to download or disclose" the information contained in the database "at any time, during or after his employment" (*id.* at PageID.7, 9).[2]  But Worldwide does not attest that

---

[1] The following facts are drawn from the Verified Complaint (ECF No. 1-1).  Worldwide has elected to rely solely on the sworn statements in its Verified Complaint to support its motion for a preliminary injunction, and Worldwide does not appear to request an evidentiary hearing under Federal Rule of Civil Procedure 65, arguing instead that the "nontestamentary" evidence it has submitted entitles it to injunctive relief (*see* Reply, ECF No. 13 at PageID.106).  Defendants have not submitted evidence, contending that Worldwide's motion fails as a matter of law (*see id.*; *see also* Opp., ECF No. 12).  The key facts relied upon in this Opinion and Order are thus undisputed.

[2] This statement from Paragraph 11 of Worldwide's Verified Complaint—asserting Worldwide's conclusion that Defendant Belding lacked authorization to obtain or disclose information from the database—resembles language from a contract, but as the record stands now, this statement is not drawn from a contract, employment agreement, employee handbook, or any similar document (*see id.* at PageID.7, 9).  The Verified Complaint does not state whether the parties entered into an express oral agreement or even an implied agreement regarding Defendant Belding's authorization to access the database.  The Verified Complaint only offers the above-noted conclusion.

2

Defendant Belding signed a confidentiality agreement, a non-competition agreement, an employee handbook, an employment agreement, or any similar documents (*see generally id.*).

After Defendant Belding resigned from his employment as a digital marketing manager at Worldwide, he formed the company Western Obsessions (*id*. at PageID.9). Western Obsessions is based in Colorado, but it offers services related to hunting and outdoor excursions around the world, broadcasting these trips on YouTube (*id.*).

Worldwide attests to the conclusion that, prior to Defendant Belding's departure from the company, he "accessed—and subsequently used—[Worldwide's] confidential and proprietary customer email database to target WTA's customers and to attempt to induce them to book excursions through Western Obsessions, rather than through [Worldwide]" (*id.* at PageID.9). To support this conclusion, Worldwide attests that it embedded a number of its company email addresses in the database file containing its customer contact information (*id.* at PageID.10). These company email addresses served as a "safeguard"—if someone like Defendant Belding used Worldwide's customer contact information to send "marketing email blasts," then the Worldwide company email addresses "would be included in those blasts" and alert the company (*id.* at PageID.10). Worldwide attests that it has received "marketing blasts" from Western Obsessions and another competing company called Outdoors International, establishing that Defendant Belding and Western Obsessions accessed and used Worldwide's customer database (*id.*).

### B. Procedural Background

On September 24, 2025, Worldwide initiated this action against Defendants Belding and Western Obsessions by filing a Verified Complaint in Michigan state court (Verified Compl., ECF No. 1-1). Worldwide sets forth six claims under Michigan law, all based on Defendants' alleged "taking" and using" of its customer database: (1) a breach of fiduciary duty; (2) misappropriation

of trade secrets; (3) common law conversion; (4) statutory conversion; (5) unjust enrichment; and (6) tortious interference (*id.* at PageID.11–15). Worldwide concurrently filed an Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1-3).

On September 25, 2025, the state court denied Worldwide's request for a temporary restraining order, reasoning that "[t]here is no allegation as to why no action was taken [by Worldwide] upon Belding's departure over a year ago," and "[w]ithout more specific allegations, the fact that a year passed between Belding's departure and the filing of this complaint suggests that a short delay to give Defendants an opportunity to be heard will not cause harm to [Worldwide] that is materially different from the harm that has already occurred" (State Order, ECF No. 1-4 at PageID.50). The state court set a preliminary injunction hearing for October 23, 2025, and ordered Worldwide to serve copies of the pleadings on Defendants not later than October 9, 2025 (*id.*).

On October 23, 2025, Defendants filed for removal under 28 U.S.C. §§ 1331 and 1367 (*see* NOR, ECF No. 1). This Court set an expedited briefing schedule on the Motion for Preliminary Injunction (Scheduling Order, ECF No. 7). Defendants filed a response in opposition to the motion for preliminary injunction on November 10, 2025 (Opp., ECF No. 12). Worldwide filed a reply in support of the motion on November 17, 2025 (Reply, ECF No. 13). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

In evaluating a request for a preliminary injunction, a district court should consider: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause

4

substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024); *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023) (citing *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc)).  These four considerations are factors to be balanced and not prerequisites that must be satisfied. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974)).  That said, a "finding that there is no likelihood of success on the merits 'is usually fatal' to a movant's preliminary injunction motion." *Raymond James & Assoc., Inc. v. Leonard & Co.,* 411 F. Supp. 2d 689, 693 (E.D. Mich. 2006) (quoting *Gonzales v. Nat'l Bd. of Medical Examiners,* 225 F.3d 620, 625 (6th Cir. 2000)).  "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty.*, 305 F.3d 566, 573 (6th Cir. 2003).

The Sixth Circuit has stated that an evidentiary hearing on a preliminary injunction motion "is only required when there are disputed factual issues, and not when the issues are primarily questions of law." *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) ("Where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. However, where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.") (cleaned up); *accord Lexington–Fayette Urban County Gov't v. BellSouth Telecomm., Inc.,* 14 F. App'x 636, 639 (6th Cir. 2001) (noting that Rule 65 "does not require the presentation of oral testimony" particularly "when the issues litigated are primarily questions of law").

5

## B. Discussion

For the reasons stated in greater detail below, the Court concludes that Worldwide has not shown a likelihood of success on the merits of any of its claims, each of which arise from the same set of underlying facts—Defendants "taking and subsequently using the client database" (*See* Verified Compl., ECF No. 1-1 at PageID.6, 11–15). Given the "scant evidence" presented by Worldwide, the balance of the four relevant preliminary injunction factors counsels against entry of the extraordinary remedy of injunctive relief. *See Husted*, 751 F.3d at 417.

### 1. Worldwide Fails to Establish a Likelihood of Success on the Trade Secrets Claim

Worldwide argues that Defendants' "misappropriation of [Worldwide's] trade secrets constitutes a violation of the Michigan Uniform Trade Secrets Act ("MUTSA"), MCL 445.1901 *et seq*." (Verified Compl., ECF No. 1-1 at PageID.13). "To state a valid MUTSA claim, the plaintiff must allege that (1) it has protectable trade secrets and (2) the defendant improperly acquired, disclosed, or used those trade secrets." *See Ajuba Int'l v. Saharia*, 871 F. Supp. 2d 671, 691 (E.D. Mich. 2012). Defendants have not shown a likelihood of success of this claim.

*(a) Worldwide Has Carried Its Burden on the Client Database's Trade Secret Status*

"The MUTSA defines a trade secret as 'information . . . that possesses independent economic value and is the subject of reasonable efforts to maintain its secrecy." *Innovation Ventures, L.L.C. v. Aspen Fitness Prods.*, No. 11-CV-13537, 2015 WL 11071470, at *3 (E.D. Mich. Mar. 31, 2015) (quoting MICH. COMP. LAWS. § 445.1902(d)).[3] Courts applying Michigan

---

[3] "Michigan courts look to several factors to determine whether information constitutes a trade secret: (1) extent to which information is known outside of owner business, (2) extent to which information is known by employees and others involved in business, (3) extent of measures taken to guard secrecy of information, (4) value of information to owners and competitors, (5) amount of effort and money expended in developing information, and (6) ease or difficulty with which information could be properly acquired or duplicated by others." *Innovation Ventures*, 2015 WL 11071470 at *3.

law frequently analyze whether "customer lists" similar to the client database here qualify as trade secrets, and the status of customer information turns on the facts of each case.[4]  The limited record before the Court indicates that Worldwide's client database contains "detailed profile and financial information" for thousands of customers, including "how they interact with the [Worldwide] website," and further indicates that the client database was "painstakingly prepared by the company over the course of many years, at significant expense" (Verified Compl., ECF No. 1-1 at PageID.6–7).  These facts, although limited, are analogous to the "detailed information" in *Laethem* that "can qualify as trade secrets."  *See* 2007 WL 2433980 at *19 ("The plaintiffs here claim to have compiled very detailed information regarding its customers, their needs, and their owners and employees. This type of information can qualify as trade secrets" under MUTSA).[5]

Turning to whether Worldwide took "reasonable efforts to maintain [the] secrecy" of its database, *see Innovation Ventures*, 2015 WL 11071470 at *3, the record shows that Worldwide "limit[ed] the individuals with authorization to access" the database and "embedded" company email addresses in it "as a safeguard" (Verified Compl., ECF No. 1-1 at PageID.10).  Defendants

---

[4] *Compare Laethem Equip. Co. v. Deere & Co.*, No. 05-10113, 2007 WL 2433980, at *19 (E.D. Mich. Aug. 14, 2007) (concluding based on Michigan law that "[d]etailed information about customers can constitute trade secrets. The plaintiffs here claim to have compiled very detailed information regarding its customers, their needs, and their owners and employees. This type of information can qualify as [a] trade secre[t]") *with Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 629 (E.D. Mich. 2005) ("The Michigan Supreme Court has held that there is nothing improper in an employee establishing his own business and communicating with customers for whom he had formerly done work in his previous employment. Thus, customer lists developed by a former employee and information relating to a customer's needs are not 'trade secrets' under the MUTSA, unless the employee is bound by a confidentiality agreement.") (cleaned up).

[5] The Court reiterates that the Verified Complaint is the only evidence presently before the Court, and emphasizes that the "findings of fact and conclusions of law made by a district court in granting or denying a preliminary injunction are not binding" on the Court in later proceedings on the merits.  *See Merck Sharp & Dohme Corp. v. Conway*, 861 F. Supp. 2d 802, 816 (E.D. Ky. 2012) (cleaned up) (citing *United States v. Edward Rose*, 384 F.3d 258, 261 (6th Cir. 2004)).

7

have offered no authority, no evidence, and only cursory argument[6] to suggest that Worldwide's specific actions fail to qualify as "reasonable efforts to maintain [the database's] secrecy" under Michigan law.[7] *See Innovation Ventures*, 2015 WL 11071470 at *3. The Court thus concludes—for the limited purpose of determining Worldwide's likelihood of success on the merits as relevant to the preliminary injunction motion at bar—that Worldwide's client database qualifies as a "trade secret" under MUTSA. *See Laethem*, 2007 WL 2433980 at *19.

*(b) Worldwide Has Not Carried Its Burden of Showing Misappropriation*

The Court must next determine whether Worldwide has shown Defendants "improperly acquired, disclosed, or used [the] trade secrets" at issue—Worldwide's customer database. *See Ajuba*, 871 F. Supp. 2d at 691. Worldwide admits that it has no "direct evidence of downloading or transfer" of the database by Defendant Belding (Reply, ECF No. 13 at PageID.110). And Worldwide offers no details to support its conclusory statement[8] that Defendant Belding "did not

---

[6] *See Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, 521 F. App'x 453, 459–60 (6th Cir. 2013) ("[W]hat is a 'reasonable' precaution to maintain the secrecy of a trade secret . . . depends on a balancing of costs and benefits that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor involved.") (quoting *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir.1991)).

[7] That said, "[f]ailure to present" arguments in expedited briefing addressing a preliminary injunction motion does not necessarily "amount to a waiver" of those arguments "at a later stage in the litigation." *See United States v. Certain Land Situated in City of Detroit*, 76 F.3d 380, 380 n.1 (6th Cir. 1996); *Chase v. Morgan*, No. 1:24-CV-265, 2025 WL 918438, at *11 (E.D. Tenn. Mar. 26, 2025) ("While there are some contexts in which a party's failure to respond can constitute waiver or abandonment of an issue or claim, failure to respond in a meaningful or rigorous manner to certain issues in response to a motion for preliminary injunction is not one of them.").

[8] Although the Verified Complaint qualifies as evidence supporting Worldwide's motion, as with evidence presented in an affidavit, "this Court cannot grant a preliminary injunction based on conclusory statements alone." *Kensu v. Rapelje*, No. 12-11877, 2014 WL 1028948, at *4 (E.D. Mich. Mar. 14, 2014); *accord Herb Reed Enters. v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (indicating a district court should not rely on "unsupported and conclusory statements" in finding facts as part of a preliminary injunction analysis); *Rachel Roe v. Rutherford County*, No. 3:25-CV-00429, 2025 WL 3205703, at *1 n.2 (M.D. Tenn. Nov. 17, 2025) ("[O]n a motion for preliminary injunction, a court naturally accepts only legal assertions that the court independently

have authorization to download or disclose" the information contained in the database "at any time, during or after his employment" (Verified Compl., ECF No. 1-1 at 7, 9).  Worldwide has not, for example, submitted sworn statements from Defendant Belding's supervisor identifying what Worldwide told Defendant Belding about his authorization to retain or use customer information, it has not submitted a single document from Defendant Belding's employee file, and it has not submitted any email communications to or from Defendants, Worldwide, or any of its customers (*see* Reply, ECF No. 13 at PageID.106–109).[9]  Additionally, Worldwide does not attest or otherwise present evidence that Defendant Belding signed a confidentiality agreement, a non-competition agreement, an employee handbook, an employment agreement, or any similar documents.  *See* Verified Compl., ECF No. 1-1; *Wysong*, 412 F. Supp. 2d at 629 (applying Michigan law and noting that "there is nothing improper in an employee establishing his own business and communicating with customers for whom he had formerly done work in his previous

---

finds to be meritorious.").  *Cf. Mahammad v. Chadwick*, 859 F.2d 152 (6th Cir. 1988) ("Appellant's conclusory statements fail to make such a showing; therefore, the portion of the order denying a preliminary injunction is not immediately appealable."); *Wrenn v. Dep't of Mental Health*, 798 F.2d 1417 (6th Cir. 1986) (affirming a district court that "denied a preliminary injunction because [the movant's] allegations were conclusory"); *Jones v. Berrien Cnty. Jail*, No. 1:15-CV-1323, 2017 WL 2544188, at *2 (W.D. Mich. June 13, 2017) ("A plaintiff cannot simply replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit.") (cleaned up); *Thomas v. United States*, No. 09 CV 1779, 2010 WL 596465, at *2 (N.D. Ohio Feb. 16, 2010) ("This Court need not, however, accept the legal conclusions offered in an affidavit.")

[9] Perplexingly, Worldwide argues—in response to Defendants' assertion that Worldwide has submitted "zero evidence" outside of the Verified Complaint—that "Defendants already possess the very emails at issue because they sent them" (ECF No. 13 at PageID.106).  But this is not a discovery dispute.  Worldwide is seeking the "extraordinary remedy" of injunctive relief, and Worldwide must present evidence—*to the Court*—showing that the "circumstances clearly demand" an injunction.  *Overstreet*, 305 F.3d at 573.  The Court does not have access to any emails supporting the above-noted, conclusory statements in the Verified Complaint.  *See Sutherland v. Warren*, No. 18-CV-13568, 2020 WL 7635969, at *2 (E.D. Mich. Oct. 30, 2020), *R&R adopted*, No. 2:18-CV-13568, 2020 WL 7626774 (E.D. Mich. Dec. 22, 2020) (denying a preliminary injunction based on a lack of evidence after the court noted that plaintiff referred "to an affidavit and exhibit to support his motion for preliminary injunctive relief, but neither are attached").

employment" given that under certain circumstances, whether use of client information obtained through prior employment is improper depends on the existence of a "confidentiality agreement").

Worldwide responds that it may properly rely on "indirect evidence" to prove unauthorized access, citing a case decided under the separate standard applicable to a motion for summary judgment. *See Stratienko v. Cordis Corp.*, 429 F.3d 592, 601 n.2 (6th Cir. 2005). Worldwide argues that its receipt of certain mass marketing emails—which are not in the record before the Court—provides this "indirect evidence" of misappropriation (*see* Reply, ECF No. 13 at PageID.106, 109). Assuming arguendo that Worldwide is correct, a movant seeking a preliminary injunction must nevertheless come forward with more than "scant evidence" to satisfy its burden.[10] *See, e.g., Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *McNeilly v. Land*, 684 F.3d 611, 614 (6th Cir. 2012) (affirming the denial of a preliminary injunction given that plaintiff made only a "small [evidentiary] showing"); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, *1 n.1 (6th Cir. Jan. 23, 1996) (noting a lack of evidence to support speculative, conclusory statements). The Court concludes, after careful review of the parties' submissions, that the "scant evidence" Worldwide has provided, *see Husted*, 751 F.3d at 417, fails to satisfy Worldwide's burden of showing that Defendants "improperly acquired, disclosed, or used [the] trade secrets" in question, *see Ajuba*, 871 F. Supp. 2d at 691.

---

[10] For the reasons stated above, Worldwide has not presented sufficient evidence, as opposed to conclusory statements and legal argument, showing Defendants "used theft, bribery, or misrepresentation to acquire or disclose" the customer information at issue, and concomitantly, Worldwide has not shown a likelihood that Defendant Western Obsessions received the information in question "from or through a person who owed a duty to the person to maintain its secrecy or limit its use." *See Baker Hughes, Inc. v. S & S Chem., LLC*, No. 1:14-CV-531, 2015 WL 6159422, at *9–10 (W.D. Mich. Oct. 20, 2015), *aff'd sub nom. Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554 (6th Cir. 2016) (citing MICH. COMP. LAWS. § 445.1902(b)(ii)(B)).

In sum, although Worldwide has carried its burden of showing that the customer database is a trade secret under MUTSA for the limited purpose of this motion, it has not shown a likelihood of success on the merits of its misappropriation of trade secrets claim.  *See Neate*, 98 F.4th at 672.

**2. Worldwide Fails to Establish a Likelihood of Success on Its Remaining Claims**

Defendants argue that Worldwide cannot show a likelihood of success on its breach of fiduciary duty, conversion, unjust enrichment, and tortious interference claims because the Michigan Uniform Trade Secrets Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret" (Opp, ECF No. 12 at PageID.99–102) (citing MICH. COMP. LAWS. § 445.1908(1)).  Worldwide responds that displacement depends on whether the "information at issue . . . satisfies" the definition of "trade secrets as defined by MUTSA" (Reply, ECF No. 13 at PageID.111) (quoting *Oldnar Corp. v. Panasonic Corp. of N. Am.*, 766 F. App'x 255, 268 (6th Cir. 2019)).[11]

For the reasons stated and subject to the limitations explained above, Worldwide has carried its burden of showing that the client database here qualifies as a "trade secre[t] as defined by MUTSA."  *See Oldnar*, 766 F. App'x at 268 (noting that "displacement under MUTSA hinges

---

[11] Worldwide further argues that "Federal Rule of Civil Procedure 8(a)(3) explicitly authorizes pleading in the alternative, and courts have permitted common-law claims to proceed alongside MUTSA claims where, as here, the trade secret status of the information remains unresolved . . . because the factual record is undeveloped" (Reply, ECF No. 13 at PageID.111–112) (quoting *Prudential Def. Sols., Inc. v. Graham*, 498 F. Supp. 3d 928, 940 (E.D. Mich. 2020) (declining to grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on MUTSA displacement). Worldwide fails to acknowledge that it is moving for a preliminary injunction, not responding to a motion to dismiss, *see id.*, and the Court must determine Worldwide's likelihood of success on the merits based on the preliminary injunction record that is presently before the Court.  The parties may litigate Worldwide's entitlement to plead its misappropriation of trade secrets and separate state law claims in the alternative at the motion to dismiss stage of this case—the "findings of fact and conclusions of law made by a district court in granting or denying a preliminary injunction are not binding" on the Court in later proceedings on the merits.  *See Merck*, 861 F. Supp. 2d at 816 (cleaned up) (citing *Edward Rose & Sons*, 384 F.3d at 261)

on the 'status' of the information at issue in the plaintiff's civil action" and remanding with instructions that the district court consider whether the information at issue "satisfies MUTSA's definition of 'trade secret'").

The Court must thus examine whether Worldwide's remaining claims are "based on misappropriation of [the] trade secrets" at issue here, namely the client database. *Id.* If they are, those claims are "displaced" by MUTSA. *See id.*; MICH. COMP. LAWS. § 445.1908(1). The Verified Complaint establishes that all Worldwide's remaining claims are based on the "taking and subsequent use" of Worldwide's client database—the same facts that give rise to Worldwide's trade secrets claim (*see* Verified Compl., ECF No. 1-1 at PageID.6, 11–15).[12] The Court thus concludes that Worldwide has not shown a likelihood of success on the merits of its remaining claims because they are displaced by MUTSA. *See Neate*, 98 F.4th at 672.[13]

### 3. The Likelihood of Irreparable Injury Does Not Weigh in Favor of an Injunction

"[T]he loss of trade secrets is usually considered an irreparable harm [that] cannot be measured in money damages" and thus "*where it is shown* that the defendant has misappropriated the plaintiff's trade secrets, irreparable harm is generally presumed." *Kendall Holdings, Ltd. v.*

---

[12] Under the heading "nature of the case" in the Verified Complaint, Worldwide indicates that its claims "aris[e] out of Defendants' theft and surreptitious use of [Worldwide's] confidential and proprietary customer database" (Verified Compl., ECF No. 1-1 at PageID.6). Worldwide again cites the "taking and subsequen[t] us[e of] the client database" as the basis for the individual claims set forth in the Verified Complaint (*see id.* at PageID.11–15).

[13] Defendants suggest that Worldwide's Verified Complaint is ambiguous as to whether its tortious interference claim alleges interference with "business expectations" or "contracts" separate and apart from the alleged misappropriation of the trade secrets discussed above (*see* Opp., ECF No. 12 at PageID.102). To the extent Worldwide's claims are not fully displaced by MUTSA—and the Court concludes that they are—those claims fail for the independently sufficient reason that Worldwide has failed to come forward with more than "scant evidence" to support them, for the reasons noted above adend in the opposition brief. *See id.*; *Husted*, 751 F.3d at 417; *McNeilly*, 684 F.3d at 614; *Certain Land Situated in City of Detroit*, 1996 WL 26915 at *1 n.1.

*Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008) (collecting cases) (emphasis in original). "This presumption does not help [Worldwide] in this case, however, because . . . [Worldwide] has not established a strong likelihood of success on the merits" of any of its claims, and thus "irreparable harm cannot be presumed." *Id.*[14] This factor weighs against the grant of a preliminary injunction. *See Neate*, 98 F.4th at 672.

### 4. The Balance of Harms Does Not Weigh in Favor of an Injunction

Worldwide cites no relevant, binding authority establishing that the balance of hardships applicable to the facts here weighs in favor of an injunction. *See Neate*, 98 F.4th at 672. As discussed in greater detail above, Worldwide has not carried its burden on whether Defendants misappropriated customer information from Worldwide as opposed to compiling it properly on their own. *See Wysong Corp*, 412 F. Supp. 2d 629 (noting under Michigan law "that there is nothing improper in an employee establishing his own business and communicating with customers for whom he had formerly done work in his previous employment" and noting that under certain circumstances, whether use of customer information obtained through prior employment is improper depends on the existence of a "confidentiality agreement"). This factor does not weigh in support of a preliminary injunction. *See Neate*, 98 F.4th at 672.

### 5. The Public Interest Does Not Weigh in Favor of an Injunction

Michigan has a "strong interest in protecting its residents" from "theft of trade secrets." *Ford Motor Co. v. Launch Tech Co.*, No. 17-12906, 2018 WL 1089276, at *9 (E.D. Mich. Feb.

---

[14] Furthermore, as the state court noted in denying Worldwide's request for a temporary restraining order, Worldwide "did in fact delay in filing suit and requesting injunctive relief," undermining the weight of Worldwide's arguments regarding an imminent "threat of irreparable harm." *See Kendall*, 630 F. Supp. 2d at 867 (noting plaintiff first sent a cease-and-desist letter and waited for weeks before moving for injunction); *see also* Demand Letter from Varnum on August 14, 2025, ECF No. 1-1 at PageID.17; State Court Order Denying TRO, ECF No. 1-4 at PageID.49–50.

26, 2018). But, as discussed above, this "interest is not implicated in this case" given that Worldwide "has not established a strong likelihood of success on its misappropriation claim" or on any of its other claims. *See Kendall*, 630 F. Supp. 2d at 869. Worldwide cites no relevant, binding authority to the contrary. This factor weighs against the grant of a preliminary injunction. *See Neate*, 98 F.4th at 672.

### 6. The Motion Does Not Present Factual Disputes That Require an Evidentiary Hearing

The Sixth Circuit has stated that an evidentiary hearing on a preliminary injunction motion "is only required when there are disputed factual issues, and not when the issues are primarily questions of law." *See Certified Restoration*, 511 F.3d at 553 (cleaned up). As noted in detail above, the key facts supporting this Opinion and Order are undisputed at this stage of the litigation. *See id.*[15] And Worldwide has apparently chosen to rely on the "nontestamentary" evidence it has submitted rather than seeking an evidentiary hearing under Federal Rule of Civil Procedure 65 (*see* Reply, ECF No. 13 at PageID.106). The Court thus exercises its discretion to decide the motion at bar on the documentary record. *See Certified Restoration*, 511 F.3d at 552.

---

[15] Although the Court has noted a lack of evidence on several points, the absence of evidence is distinct from a factual dispute. The deficiencies in proof noted above do not hinge on credibility determinations amenable to resolution through an evidentiary hearing; these deficiencies could have been addressed—if at all—through submission of a more developed documentary record. *See Lexington–Fayette Urban County Gov't v. BellSouth Telecomm., Inc.*, 14 F. App'x 636, 639 (6th Cir. 2001) (noting that Rule 65 "does not require the presentation of oral testimony" particularly "when the issues litigated are primarily questions of law").

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Worldwide Trophy Adventures, LLC's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1-3) is DENIED.

Dated:  November 25, 2025                                    /s/ Jane M. Beckering
                                                                                    JANE M. BECKERING
                                                                                    United States District Judge